UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lisa Marie Brady

      v.

Jeni Mosca, et al.

Civil No. 23-cv-391-LM
Opinion No. 2023 DNH 154 P

**O R D E R**

      Lisa Brady, a former special education teacher in the Somersworth School District, alleges that her former employer and others conspired to deprive her of her constitutional rights. Brady is suing the Somersworth School Board; Jeni Mosca, former Somersworth School District Superintendent; Pamela MacDonald, former Special Education Coordinator for the Somersworth School District; and Dana Hilliard, former Somersworth School Principal (the "Somersworth Defendants"). She is also suing Jeanne Kincaid, former legal counsel to the school district; Richard Farrell, a complaint investigator for the New Hampshire Department of Education, and Virginia Barry, former Commissioner of the New Hampshire Department of Education (the "State Defendants"); and the New Hampshire chapter of the National Education Association ("NEA-NH").[1] In addition, Brady is suing current and former employees of the University of New Hampshire: Daniel Habib, Mary Schuh, and Michael McSheehan (the "UNH Defendants"). Brady brings four claims

---

[1] Brady sues Mosca, MacDonald, Barry, and Habib in their individual capacities only. She sues Hilliard, Kincaid, Farrell, Schuh, and McSheehan in their individual <u>and</u> official capacities. Finally, Brady is suing the Somersworth School Board and NEA-NH in their official capacities only.

under 42 U.S.C. § 1983 against all defendants. Counts I through III allege a civil conspiracy among defendants to deprive her of various constitutional rights. Count IV alleges that defendants violated Brady's substantive due process rights.[2]

Defendants moved to dismiss Brady's claims under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> doc. no. 11 (Somersworth Defendants); doc. no. 27 (Kincaid); doc. no. 30 (NEA-NH); doc. no. 48 (State Defendants); doc. no. 50 (UNH Defendants). After the Somersworth Defendants filed their motion, Brady filed three motions to amend her complaint (doc. nos. 23, 31, & 43) to make additional allegations about the civil conspiracy and to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Brady also filed a motion to set aside a state court judgment (doc. no. 53), a motion to admit evidence in support of the motion to set aside (doc. no. 65), a motion seeking both discovery and an evidentiary hearing (doc. no. 57), and a motion for default judgment (doc. no. 68) against the UNH Defendants, the State Defendants, and NEA-NH.

For the following reasons, Brady's first motion to amend (doc. no. 23) is granted and construed as an addendum to the complaint. The court otherwise denies Brady's motions and grants defendants' motions to dismiss.

---

[2] Although this due process claim is not set out in a separately enumerated count, the court refers to it as Count IV.

## BACKGROUND

This case is part of Brady's years-long litigation following her 2015 employment termination as a special education teacher in the Somersworth School District. Brady's allegations do not proceed in a linear fashion. Instead, Brady presents a series of legal conclusions with excerpts and quotations from other documents and media (including school administrative documents, prior court orders, hearing transcripts, emails, and correspondence with defendants) that she has attached as exhibits to her complaint. Her complaint spans 101 pages and includes an additional 142 pages of exhibits.

I.    The Underlying Dispute[3]

Brady was a licensed, tenured special education teacher in the Somersworth School District, working at the Somersworth Middle School. She worked with a special education student to whom she refers as "Axel." In 2012, the UNH Defendants used an educational grant to produce a film about Axel through the UNH Institute on Disability. The film centers on Axel's academic experience.

Brady alleges that the film fraudulently misrepresents Axel's cognitive abilities. The film depicted educators working with Axel using an educational method called "facilitated communication." Brady alleges that the use of this technique in the film made it appear that Axel's performance improved miraculously, while in reality the depiction was a fraud. She alleges that the UNH

---

[3] The court assumes, as it must at this early stage in the litigation, that all factual allegations in Brady's complaint are true.

Defendants knew that facilitated communication was a sham but used the film to portray the method as an innovation.

Rather than use facilitated communication, Brady continued to administer Axel's special education program as she saw fit. In September 2012, Brady filed a grievance against MacDonald (the Special Education Coordinator) disagreeing with MacDonald's instructions for Axel's educational plan. Though Brady had several complaints about MacDonald, the disagreement centered primarily around the use of facilitated communication. Brady alleges that, on or about September 5, 2012, the assistant superintendent threatened to fire Brady if she did not withdraw the complaint. In March 2013, MacDonald put a warning in Brady's file, which Brady alleges included "an intentional lie" about Brady disobeying orders. In April 2013, Brady filed another grievance about MacDonald, and Brady alleges that the assistant superintendent again asked her to withdraw the complaint or risk termination.

During that same timeframe, Brady also had problems with a different school employee. Brady suspected that employee had substance abuse issues that negatively impacted her performance. In January 2014, Brady found that her "file cabinet was kicked-in, and her identification badge had visible impressions from teeth marks, along with a large accumulation of dried brown saliva." Id. ¶ 79. Brady thought the other employee was the culprit. To confirm this belief, Brady sent her damaged badge for DNA testing with an item she believed had a sample of the employee's DNA. The test was inconclusive. In March 2014, the principal, Hilliard,

reprimanded Brady in writing for testing the objects without the employee's knowledge or consent. As Brady's relationships with school administrators worsened, the administrators decided to transfer her to another school—an elementary school. Brady alleges that the transfer was a demotion.

Starting in the summer of 2014, Brady made a series of disclosures about the Axel film to individuals inside and outside of the school. In July 2014, Brady filed a fraud complaint with then-Commissioner Barry regarding the film. In that complaint, she also alleged that Superintendent Mosca, MacDonald, and the Somersworth School District retaliated against her for bringing attention to the problems with the film. Several months later, in November, Barry issued a decision finding Brady's claims unsubstantiated. In addition to filing a complaint, Brady sent an email to a complaint investigator for the New Hampshire Department of Education (Farrell) communicating her concerns regarding the film. She also emailed Mosca with her concerns about the Axel film. And finally, Brady contacted the press with her allegations about the film. Although her superiors told her to stop contacting the press, Brady concedes that she continued to do so.

II.   Brady's Termination

In early 2015, the Somersworth School Board held a hearing about Brady's conduct. Attorney Kincaid served as the Somersworth School District's counsel. Despite Brady's status as a dues-paying member of NEA-NH, the union declined to provide Brady with counsel for the school board hearings. The Somersworth School

Board ultimately found that—by communicating a student's personal information to third parties—Brady violated the Family Educational Rights and Privacy Act. The Board also determined that Brady's unauthorized DNA testing and disclosure of that testing was unprofessional and violated both school district policy and local laws. The Board then terminated Brady's employment. After Brady's termination, NEA-NH also declined to appeal her termination.

III.   <u>Brady's Prior Litigation[4]</u>

The instant lawsuit is not Brady's first attempt to litigate matters related to her termination. In 2016, Brady brought her first suit in this court against the Somersworth School Board, Kincaid, Mosca, and MacDonald. See <u>Brady v. Sch. Bd., Somersworth Sch. Dist.,</u> No. 16-cv-69-JD, 2016 WL 6537629, at *3 (D.N.H. Nov. 3, 2016). Brady brought two primary claims: a claim under 42 U.S.C. § 1983, alleging that her First and Fourteenth Amendment rights were violated, and a claim under the New Hampshire Whistleblower Protection Act, RSA chapter 275-E. <u>Id.</u> She also included nine other state and federal claims. <u>Id.</u> In that case, Judge Joseph DiClerico dismissed all of Brady's federal claims (for failing to state any claims) and then dismissed her supplemental state claims under 28 U.S.C. § 1367(c) without prejudice. <u>Brady,</u> 2016 WL 3248247, at *5 (D.N.H. June 13, 2016) (dismissing

---

[4] The court's summary of the prior litigation comes from the orders in the various cases.

claims against Kincaid); 2016 WL 6537629, at *6 (dismissing claims against remaining defendants).

In 2018, Brady then brought the same state law claims in state court. New Hampshire Superior Court Judge Mark Howard granted the defendants' motion for summary judgment. Brady filed a motion for reconsideration, which Judge Howard denied. Brady again moved for reconsideration, arguing that Judge Howard erroneously cited her original complaint, instead of her amended complaint, when granting summary judgment. Judge Howard denied that second motion as untimely. Brady appealed Judge Howard's decisions, and the Supreme Court of New Hampshire denied her appeal as untimely. She filed a motion for reconsideration, which the Court also denied. See Brady v. Howard, No. 21-cv-614-PB, 2022 WL 88159, at *1 (D.N.H. Jan. 7, 2022) (describing state court proceedings), aff'd, No. 22-1060 (1st Cir. Sept. 8, 2023).

Then, in 2021, Brady brought a second set of claims in federal court. This time she named as defendants each judge involved in her failed state court litigation: Judge Howard and the four Justices who sat on her Supreme Court case. See Brady v. Howard, 21-cv-614-PB (D.N.H. July 22, 2021). Judge Paul Barbadoro dismissed the case in early 2022. Howard, 2022 WL 88159, at *1. She appealed the dismissal to the First Circuit Court of Appeals, which affirmed. Brady v. Howard, slip op. at 1 (1st Cir. Sept. 8, 2023). The Circuit also dismissed her motion for reconsideration. See Howard, slip op. at 1 (1st Cir. Nov. 20, 2023).

In this case, Brady alleges that the <u>Howard</u> case defendants, though not named defendants, are co-conspirators with the named defendants. Brady represents that she mistakenly omitted the judges as defendants here.[5]

IV.    <u>Brady's Claims Before this Court</u>

Brady brings four claims under § 1983 against all defendants. Brady alleges three counts of civil conspiracy, as follows:

- Count I: A civil conspiracy "to make false and defamatory statements" about her in "retaliation for exercise of her protected First Amendment rights." <u>Id.</u> ¶¶ 172-78.

- Count II: A civil conspiracy to permit ongoing violations of her rights under the Fourteenth Amendment's Equal Protection Clause. <u>Id.</u> ¶¶ 179-84.

- Count III: A civil conspiracy to violate the First and Fourteenth Amendments by conspiring to retaliate against her, silence her, and to deny her right under the Fourteenth Amendment to procedural due process. <u>Id.</u> ¶¶ 185-92.

In Count IV, Brady alleges defendants violated her Fourteenth Amendment "substantive" due process rights.

Because Brady is representing herself in this matter, the court construes her pleadings liberally. <u>See</u> <u>Erickson v. Pardus,</u> 551 U.S. 89, 94 (2007).

---

[5] In her motions to amend, Brady does not seek to add the judges as defendants in this case.

V.    Brady's Exhibits

Included among the documents[6] attached as exhibits are emails from

educators and Somersworth School District staff communicating with Brady about

matters related to Axel and the film. Doc. no. 1 ¶¶ 51 & 122; doc. no. 1-3 at 15-16.

Additionally, Brady appended emails between UNH Defendants Habib and Schuh,

in which they expressed their disdain for Brady's criticisms of their film. Doc. no. 1

¶¶ 126-28. In one such email, Habib emailed Schuh: "She CCed the executive editor

of the New York Times. Oh boy, now we're really in trouble." [7] Id. ¶ 130. Other

emails reveal the UNH Defendants discussing how to respond to a Slate article

mentioning Brady and criticizing the use of facilitated communication in their film.

Id. ¶ 128. Schuh wrote that she "would hate to think that someone like Lisa Brady

would have this much power." Id. ¶ 127. In another email, the UNH Defendants

consider whether to respond to Brady's claims and/or pursue legal action. Id. Brady

also included in her complaint certain emails and other communications with NEA-

NH regarding her requests for union-provided counsel and the opportunity for

---

[6] Brady attaches numerous documents to her complaint related to her
termination (including minutes and transcripts from those hearings) and
communications with the various defendants (including official letters of warning,
and email correspondence between defendants and sometimes with her). In total,
she attaches 142 pages as exhibits, all of which the court has reviewed.

[7] In another email between Habib and Schuh, Habib states that he "doesn't
want to engage with [Brady] in [a] . . . debate, that's obviously a no win proposition
with her." Doc. no. 1 ¶ 126. He also describes Brady's claims as "disjointed and hateful
enough that they will basically die on the vine." Id.

arbitration, including the letter from the NEA-NH Executive Board explaining why the union declined to appeal her dismissal to arbitration. Doc. no. 1-3 at 42-43.

## DISCUSSION

The court addresses the motions in the following order: (1) Brady's motion to set aside a state court judgment and her motion to admit evidence in support of that motion; (2) Brady's motion for default judgment; (3) Brady's motion for an evidentiary hearing and discovery; (4) defendants' motions to dismiss; and (5) Brady's three motions to amend.

I.   <u>Brady's Motion to Set Aside a State Court Judgment</u>

Brady requests that the court set aside Judge Howard's New Hampshire Superior Court "Omnibus Order on Pending Motions" from 2019. The court, however, lacks authority to consider or set aside a state court judgment. <u>See, e.g.</u>, <u>Efreom v. McKee</u>, 46 F.4th 9, 17 (1st Cir. 2022) (holding that federal courts "lack jurisdiction to consider cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" (internal quotation marks omitted)). Brady's motion to set aside the state court order (doc. no. 53) is therefore denied.[8]

---

[8] Brady also filed a motion to admit evidence in support of her motion to set aside the state court judgment. Because the court denies Brady's motion to set aside the judgment, her motion to admit evidence on that issue (doc. no. 65) is similarly denied.

II.    Brady's Motion for Default Judgment

Brady requests that the court enter default judgment in her favor because the State Defendants and the UNH Defendants responded to Brady's complaint by filing motions to dismiss, instead of answers to her complaint. Defendants' motions to dismiss, filed before filing an answer to Brady's complaint, are procedurally proper. See Fed. R. Civ. P. 12(b). Brady's motion for default judgment (doc. no. 68) is therefore denied.

III.    Brady's Request for Evidentiary Hearings and Discovery

Brady requests an evidentiary hearing on defendants' motions to dismiss. She also requests that the court allow the case to proceed to discovery because defendants "have not answered to the pleadings and refuse to acknowledge or address events that occurred after the 2015 hearing. Discovery would allow the parties the opportunity to gather additional facts that show conspiracy." Doc. no. 57 ¶ 1.

The court addressed and denied substantially the same request in its November 20, 2023 Order (doc. no. 54). As explained in that Order, the court does not resolve factual disputes or hold evidentiary hearings at this stage. Brady's motion for an evidentiary hearing and for discovery (doc. no. 57) is therefore denied.

IV.    Motions to Dismiss

Brady brings three civil conspiracy claims and one substantive due process claim against all defendants. In separate motions, defendants move to dismiss all

four counts. They each argue that the court should dismiss her claims under Rule

12(b)(6) for failure to state a plausible legal claim. Because Brady's complaint fails

to state a claim, the court grants defendants' motions to dismiss the complaint on

this basis. [9]

A.    Standard of Review

Under Rule 12(b)(6), the court must accept the factual allegations in the

complaint as true, construe reasonable inferences in the plaintiff's favor, and

"determine whether the factual allegations in the plaintiff's complaint set forth a

plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A.,

772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). The court draws "the

relevant facts from the complaint, the documents annexed to it, and other materials

fairly incorporated in it." Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 100 (1st

Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

---

[9] Some defendants assert alternative grounds on which to dismiss Brady's
claims under Rule 12(b)(6), including res judicata, collateral estoppel, immunity, and
the statute of limitations. Because the court dismisses Brady's complaint for failure
to state a claim (an argument asserted by all defendants), the court need not address
the alternative arguments. See, e.g., Flock v. U.S. Dep't of Transp., 840 F.3d 49, 54
(1st Cir. 2016); cf. Hall v. Bank of Am., N.A., No. 13-cv-387-JD, 2014 WL 2608119, at
*3 (D.N.H. June 11, 2014). The UNH Defendants also argue that Brady's claims are
barred by the Rooker-Feldman doctrine. The court assumes, without deciding, that
Brady's claims are not barred by the Rooker-Feldman doctrine and proceeds to the
merits of Brady's claims. See, e.g., Kifor v. Massachusetts, No. 23-1013, 2023 WL
4402669, at *1 (1st Cir. Mar. 20, 2023) (assuming Rooker-Feldman does not bar
plaintiff's claims and holding that the plaintiff failed to state a claim for relief).

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

B.    Brady Fails to State a Civil Conspiracy Claim (Counts I, II, and III)

Counts I through III of Brady's complaint each fail to state a plausible claim of civil conspiracy. A civil conspiracy under section 1983 consists of:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Sánchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (internal quotations and brackets omitted).

An agreement is at the heart of a conspiracy claim. See Gorsuch v. Maloney, No. 10-cv-495, 2011 WL 2491312, at *3 (D.N.H. June 21, 2011). A plaintiff must plead sufficient factual allegations to suggest that an agreement existed. Katz v. McVeigh, 931 F. Supp. 2d 311, 340 (D.N.H. 2013), aff'd, Nos. 13-1453, 13-1529 (1st Cir. Sept. 23, 2014). The plaintiff must allege facts that show defendants knew "the essential nature and general scope" of a particular plan, "or at the least that the parties decided to act interdependently, each actor deciding to act only because he was aware that the others would act similarly." Sánchez, 972 F.3d at 12 (quotation omitted). Although "conspiracy is a matter of inference," Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008), conclusory or speculative allegations

about an agreement are insufficient to state a conspiracy claim, see Webber v. Deck, 433 F. Supp. 3d 237, 247 (D.N.H. 2020).

Brady alleges that defendants conspired to retaliate against her in violation of her First Amendment rights (Count I); conspired not to intervene amidst violations of her rights under the Fourteenth Amendment Equal Protection Clause (Count II); and conspired to retaliate against her by depriving her of procedural due process (Count III). Brady alleges that over the course of approximately ten years, educators, state education administrators, certain private citizens, and state judges conspired against her by allowing distribution of the film, retaliating against Brady for reporting her beliefs, making false allegations against her, and then terminating her employment. The purported conspiracy began in 2012 with the film's production, and then continued with various conspiratorial acts, including the State Defendants' finding that there was no fraud, the Somersworth Defendants' termination of Brady's employment, and the UNH Defendants' ongoing sale of the film. According to Brady, the conspiracy achieved its goals when the New Hampshire Supreme Court denied her attempt to litigate the purported wrongdoing in state court.

Brady's complaint is, however, devoid of facts that tend to show the existence of any agreement among defendants. Nor do the allegations raise any plausible inference that defendants had a plan, much less that they knew of and acted in accordance with a plan. Instead, Brady's complaint contains unsupported legal conclusions, such as that defendants "conspired" and "acted in concert" to deprive

14

her of "clearly established constitutional rights." Doc. no. 1 ¶ 191. Similarly, Brady relies on conclusory allegations in urging the court to infer the existence of a conspiracy from a pattern of alleged criminal conduct. See, e.g., doc. no. 38 at 16; doc. no. 52 at 9; doc. no. 56 at 17; doc. no. 1 ¶ 121; doc. no. 35 at 14.

Brady points to email communications to argue that the court can imply the existence of a conspiracy. The problem with her argument is that none of the emails supports her theory. The emails show the UNH Defendants expressing disdain for Brady and discussing how to respond to her allegations.[10] But even read favorably to Brady the emails (and all other attached documents) fail to raise a plausible inference that there was any agreement or plan among defendants to cause Brady harm or violate her rights.

Additionally, several paragraphs of Brady's complaint include excerpts from Maryland caselaw describing how to prove a conspiracy with circumstantial evidence, which Brady cites as support for her conspiracy claims. Doc. no. 1 ¶¶ 162-63; see doc. no. 18 at 10; doc. no. 35 at 15-16; doc. no. 38 at 25. But Brady never alleges facts (circumstantial or otherwise) sufficient to raise an inference that defendants conspired to deprive Brady of her constitutional rights.

Because Brady makes only bare and conclusory allegations that defendants were engaged in a conspiracy, her civil conspiracy claims do not survive review. For these reasons, the court therefore grants defendants' motions to dismiss (doc. nos.

---

[10] Brady also includes a number of emails that she is copied on, emails between a defendant (or defendants) and non-parties, and emails between non-defendants.

11, 27, 30, 48, & https://ecf.nhd.uscourts.gov/doc1/1170303809750) Counts I through III.

C.    Brady Fails to State a Substantive Due Process Claim (Count IV)[11]

To state a substantive due process claim, a plaintiff challenging acts of state officials must sufficiently allege that: (1) the officials' "acts were so egregious as to shock the conscience"; and (2) that the acts "deprived [the plaintiff] of a protected interest in life, liberty, or property." Pagan v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006). Courts must determine whether conduct shocks the conscience, as a threshold matter, before deciding whether an official's acts deprived the plaintiff of a constitutionally protected interest. See DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005).

Actions that shock the conscience "have been described as 'truly irrational,' 'extreme and egregious,' 'truly outrageous, uncivilized, and intolerable,' and 'stunning.'" Kraft v. Mayer, No. 10-cv-164-PB, 2012 WL 235577, at *5 (D.N.H. Jan. 25, 2012) (quoting González-Fuentes v. Molina, 607 F.3d 864, 880-81 (1st Cir. 2010)). This is a difficult standard to meet, as "[e]ven violations of the law resulting from bad faith do not necessarily amount to unconstitutional deprivations of substantive due process . . . ." McConkie v. Nichols, 446 F.3d 258, 261 (1st Cir.

---

[11]  Throughout her complaint, Brady refers to alleged deprivations of procedural due process. In Count IV, however, Brady states that she is bringing a substantive due process claim and that defendants' conduct is "outrageous and rises to a level that shocks the conscience." Doc. no. 1 ¶ 195. The court, therefore, considers Count IV to allege a substantive due process violation.

2006). Determining whether conduct is conscience-shocking is a highly fact-specific

task. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000).

Although this fact-specific inquiry depends on the circumstances in each case, the

"shock the conscience" standard is necessarily a high one to prevent the

Constitution from being reduced to a "font of tort law." Drake v. Town of New Bos.,

No. 16-cv-470-SM, 2017 WL 2455045, at *3 (D.N.H. June 6, 2017) (quotation

omitted).

Representative cases in which plaintiffs alleged a viable substantive due

process claim include:

> Those involving a student blinded in one eye when a coach
> intentionally struck him in the head with a metal weight;
> a teacher's fabrication of sexual abuse charges against a
> father, resulting in loss of contact with his child for three
> years; rape by a police officer in connection with a car stop;
> a 57–day unlawful detention in the face of repeated
> requests for release, police officers aiding a third-party in
> shooting the plaintiff; an intentional assault by a police
> officer who struck a pretrial detainee twice in the head and
> threatened to kill him; and a principal forcing his way into
> a room where a student was hiding, grabbing her from the
> floor, throwing her against the wall, and slapping her.

Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations and footnote

omitted). Courts are more likely to find that conduct shocks the conscience when

there is highly intrusive conduct, the use of physical force, or interference with a

protected relationship (e.g., a parent-child relationship). See Cruz-Erazo, 212 F.3d

at 622-23. Without more, allegations that certain conduct caused a plaintiff harm

will not suffice. See, e.g., Spencer v. Doran, No. 18-CV-1191-LM, 2020 WL 4904826,

at *5 (D.N.H. Aug. 20, 2020) (finding allegations of deliberate misuse of official authority targeting the plaintiff and allegations of false testimony aimed at causing the plaintiff economic and reputational harm insufficient to state a substantive due process claim).

As best the court can tell, Brady is alleging that defendants violated her substantive due process rights by allowing a purported "wire fraud" to occur. She also alleges that the false claims about facilitated communication and about her special needs student are "outrageous." Doc. no. 1 ¶ 20. Further, Brady alleges that defendants' accusation that she improperly tested another employee's DNA was an "outrageous pretext" to retaliate against and terminate Brady. Id. ¶ 79. Brady's allegations do not involve threats of harm of violence, the use of physical force, or interference with a protected relationship. Ultimately, even if true, none of Brady's allegations reaches the high "shock the conscience" threshold.

Because Brady fails to allege that defendants' behavior shocks the conscience, her substantive due process claim (Count IV) does not survive review. The court therefore grants defendants' motions to dismiss (doc. nos. 11, 27, 30, 48, & 50) Count IV. [12]

---

[12] Defendants request sanctions against Brady in their motions to dismiss. Those requests are denied.

V.    <u>Brady's Motions to Amend</u>

Brady has filed three motions to amend her complaint to cure its deficiencies. In her first motion to amend, Brady addresses her conspiracy claims and seeks merely to add allegations to her original complaint.[13] In her second and third motions, Brady seeks to add civil RICO claims. The Somersworth Defendants, NEA-NH, and the UNH Defendants object. These defendants argue that Brady's proposed amendments are futile.[14]

Under Rule 15(a), the court should freely give leave to amend "when justice so requires." This liberal standard does not mean, however, that every request for leave to amend should be granted. <u>See</u> Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 60 (1st Cir. 2013). Rather, the court may deny a request for leave to amend when "the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part." Id. at 61 (internal quotation marks and brackets omitted). A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d

_____

[13] This motion to amend (doc. no. 23) is granted as a matter of right since Brady filed it within the twenty-one-day period for amendment under Federal Rule of Civil Procedure 15(a)(1)(B), after the Somersworth Defendants filed their motion to dismiss. Brady, however, did not file a proposed amended complaint as required under Local Rule 15.1(b). Because of Brady's pro se status, however, the court treats her first motion as an addendum ("Addendum") to her original complaint and considers all allegations therein as part of her original complaint.

[14] In their objections, defendants also argue that Brady's proposed amendments are procedurally deficient. Because the court resolves the second and third motions on futility grounds, it does not reach the procedural question.

617, 623 (1st Cir. 1996). When a plaintiff files a motion to amend in response to a motion to dismiss and discovery is not yet complete, the futility inquiry mirrors the analysis under Federal Rule of Civil Procedure 12(b)(6). Id. That is, the court applies the same standard in considering whether a motion to amend is futile as it does when deciding a motion to dismiss for failure to state a claim. See id. The court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Brady's Addendum adds more conclusory statements about the alleged conspiracy. Even construed as true, Brady's allegations in her original complaint—alongside those in the Addendum—are insufficient to permit the court to plausibly infer a viable conspiracy or substantive due process claim. See Saint Dic v. Wells Fargo Bank, N.A., Civ. Action No. 18-11936-MGM, 2019 WL 13398548, at *4 (D. Mass. Sept. 9, 2019). Therefore, the Addendum does not cure the deficiencies in Brady's complaint.

In Brady's second and third motions to amend, she seeks to add RICO claims against all defendants. To state a RICO claim, a plaintiff must allege "(1) conduct, (2), of an enterprise, (3) through either a pattern of racketeering activity, . . . ." Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 528 (1st Cir. 2015) (internal citations, quotation marks, and brackets omitted).

Brady's proposed amendments, however, fail to state a claim and are therefore futile. Like her original complaint, Brady offers only legal conclusions and

bare allegations about a RICO conspiracy based on what she describes as a form of "wire fraud" among the defendants. She includes allegations about the <u>Howard</u> defendants, asserting that they are part of this "wire fraud." Though the <u>Howard</u> defendants are not named defendants in the instant case, Brady attempts to allege that they are part of the overarching conspiracy involving the Axel film. Brady fails to explain how (or plausibly allege that) the defendants in the <u>Howard</u> case were involved in a wire fraud or RICO conspiracy with the named defendants in this case. She simply states that, three years after her termination, the <u>Howard</u> defendants "joined" in the conspiracy against her. As such, Brady again offers nothing more than conclusory statements, which are insufficient to survive a futility analysis. <u>See</u> Schatz, 669 F.3d at 55.

For the same reasons her original complaint fails to state a claim, her proposed RICO claims would not survive 12(b)(6) review. Brady's second and third motions for leave to amend (doc. nos. 31 & 43) are therefore denied as futile.

## CONCLUSION

For the above reasons, the court grants Brady's first motion to amend (doc. no. 23), but denies Brady's second and third motions to amend (doc. nos. 31 & 43), her motion to set aside the state superior court judgment (doc. no. 53), her motion to admit evidence in support of her motion to set aside (doc. no. 65), her motion for discovery and an evidentiary hearing (doc. no. 57), and her motion for default

judgment (doc. no. 68). Defendants' motions to dismiss (doc. nos. 11, 27, 30, 48, & 50) are granted as to all counts.

Because Brady is pro se and has not had the opportunity to amend the allegations in her complaint after receiving notice of its deficiencies, the dismissal is without prejudice and the court issues the following order:

> Brady may file **on or before January 19, 2024**, a motion for leave to file an amended complaint (to which she must attach a proposed amended complaint). Defendants are not required to file a response to Brady's motion for leave unless ordered by the court. If Brady's proposed amended complaint raises new claims or appears to have addressed the Rule 12(b)(6) deficiencies, the court will issue a briefing schedule. If, however, Brady's proposed amendment fails to include specific factual allegations demonstrating plausible claims for relief against defendants, the court shall—in light of Brady's history of repeatedly filing lawsuits and motions to amend her complaint—dismiss the case with prejudice.

SO ORDERED.

Landya McCafferty
United States District Judge

December 20, 2023

cc:   Lisa Marie Brady, pro se
      Counsel of Record