UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Lisa Marie Brady</u>

v.                                    Case No. 23-cv-391-SM

<u>Jeni Mosca, et al.</u>

O R D E R

Lisa Marie Brady, proceeding pro se, continues to litigate
claims that arose from the circumstances that preceded and
followed her termination from a position as a special education
teacher in the Somersworth School District in 2015.  Most
recently, Judge McCafferty dismissed Brady's claims but gave her
an opportunity to file a motion for leave to amend her
complaint.  Doc. no. 71, at 22.  Brady filed an objection to the
order (doc. no. 72) and also moved for reconsideration (doc. no.
76).

Despite her challenges to Judge McCafferty's order, Brady
filed an amended complaint (without seeking leave to do so)
(doc. no. 82) and then filed two motions for leave to file an
amended complaint (doc. nos. 83 & 84), along with a motion to
clarify (doc. no. 88).  Brady followed those motions with a
motion for Judge McCafferty's recusal (doc. no. 90), which was
granted (doc. no. 95).  The case then was reassigned to the
undersigned judge.  Brady has continued to file motions

(document nos. 94 and 96), which prompted the defendants to seek a stay (doc. no. 97). For the reasons that follow, Brady's objection to Judge McCafferty's order and Brady's motion for reconsideration are denied, and her subsequent motions are also denied. The defendants' motion to stay is terminated as moot.

## Background

### A. Brady's Dispute with the Defendants[1]

In 2012, Brady was a licensed and tenured special education teacher in the Somersworth School District, working at the Somersworth Middle School. She worked with a special education student to whom she refers as "Axel." The UNH Defendants used an educational grant to produce a film about students with learning disabilities through the UNH Institute on Disability, which focused on Axel's experiences.

Brady alleges that the film fraudulently misrepresents Axel's cognitive abilities and that the film depicted educators working with Axel using an educational method called "facilitated communication." Brady strongly disagrees with the use of facilitated communication. She considers it to be

---

[1] The background of Brady's underlying dispute with the defendants is taken from Judge McCafferty's order (doc. no. 72), along with facts alleged in the proposed amended complaint (doc. no. 83).

"pseudo-science" and a fraudulent communication technique. Doc. no. 83 at 3 & 7.[2]

Brady alleges that the depiction of Axel in the film made it appear that Axel's performance improved miraculously, which was false. She alleges that the UNH Defendants knew that facilitated communication was a sham but used the film to portray the method as an innovation.

Rather than use facilitated communication, Brady continued to administer Axel's special education program as she saw fit. Brady met with Axel's parents at the end of August of 2012 and notified Pam MacDonald, the Somersworth Director of Special Education, that Axel's mother did not believe that Axel could write, despite the results from facilitated communication. On September 3, 2012, Brady filed a grievance against MacDonald, disagreeing with MacDonald's instructions for Axel's educational plan. Although Brady had several complaints about MacDonald, the disagreement related primarily to the use of facilitated communication.

Brady alleges that, on or about September 5, 2012, the assistant superintendent threatened to fire Brady if she did not withdraw the grievance against MacDonald. Brady apparently did

---

[2] As is explained below, the amended complaint filed as document number 83 is the operative complaint at this stage of the litigation.

not withdraw the grievance and continued to communicate within the district about her views on facilitated communication and the Axel film (that the film was fraudulent). In March 2013, MacDonald put a warning in Brady's file, which Brady alleges included "an intentional lie" about Brady disobeying orders.  In April 2013, Brady filed another grievance about MacDonald, and Brady alleges that the assistant superintendent again asked her to withdraw the complaint or risk termination.

During that same timeframe, Brady had problems with a coworker.  In January 2014, Brady found that "someone had vandalized her filing cabinet and bitten [her] employee identification badge and left a big wad of brown saliva on [her] badge."  Doc. 83, ex. 14 (Somersworth School Board Hearing), at 137-38.  Brady thought her coworker was the culprit.  To confirm this belief, Brady sent her damaged badge for DNA testing with an item she believed had a sample of the coworker's DNA.  The test was inconclusive.  In March 2014, the principal, Hilliard, reprimanded Brady in writing for testing the objects without the employee's knowledge or consent.  As Brady's relationships with school administrators worsened, the administrators decided to transfer her to another school, an elementary school.  Brady alleges that the transfer was a demotion.

Starting in the summer of 2014, Brady made a series of disclosures about the Axel film to individuals inside and

outside of the school.  In July 2014, Brady filed a fraud complaint with then-Commissioner Barry regarding the film.  In that complaint, she also alleged that Superintendent Mosca, Director of Special Education MacDonald, and the Somersworth School District retaliated against her for bringing attention to the problems with the film.  Several months later, in November, Barry issued a decision, finding Brady's claims unsubstantiated.

In November of 2014, Brady sent an email to a complaint investigator for the New Hampshire Department of Education (Farrell) communicating her concerns regarding the film.  She also emailed Mosca with her concerns about the Axel film.  And finally, Brady contacted the press with her allegations about the film.  Although her superiors told her to stop contacting the press, Brady concedes that she continued to do so.

In early 2015, the Somersworth School Board held a hearing about Brady's conduct.  Attorney Kincaid served as the Somersworth School District's counsel.  Despite Brady's status as a dues-paying member of NEA-NH, the union declined to provide Brady with counsel for the school board hearings.  The Somersworth School Board ultimately found that Brady had violated the Family Educational Rights and Privacy Act by communicating Axel's personal information to third parties.  The Board also determined that Brady's unauthorized DNA testing and disclosure of that testing was unprofessional and violated both

school district policy and local laws.  The Board then
terminated Brady's employment.  After Brady's termination, NEA-
NH also declined to appeal her termination.


  B.  Brady's Litigation

    Brady has litigated her grievances related to the
termination of her employment over the course of eight years.
In February of 2016, Brady filed suit against the Somersworth
School District School Board; Jeni Mosca, the Somersworth School
District Superintendent of Schools; Pamela MacDonald, the
Special Education Director, and Jeanne Kincaid, the attorney for
the school district.  Brady v. Somersworth School District, Case
no. 16-cv-69-JD.  She alleged that the defendants violated her
First and Fourteenth Amendment rights, actionable under 42
U.S.C. § 1983, and violated the New Hampshire Whistleblower
Protection Act, along with other state law claims.  Id., doc.
no. 56 at 7.  The court dismissed Brady's federal claims, under
Federal Rule of Civil Procedure 12(c), and declined to exercise
supplemental jurisdiction over her state law claims under 28
U.S.C. § 1367(c), which were dismissed without prejudice.

    With her state law claims preserved, Brady filed suit in
state court to litigate those claims.  Brady v. Somersworth
School District, 219-2018-cv-02.  The case was assigned to
Superior Court Judge Mark Howard, who granted the defendants'

6

motion for summary judgment on all of Brady's claims and denied Brady's motions for reconsideration.  Brady appealed that decision to the New Hampshire Supreme Court, where the case was dismissed as untimely filed.  Brady v. Somersworth School District, Case No. 2020-0274 (N.H. Sup. Ct. July 21, 2020).  The New Hampshire Supreme Court also denied Brady's subsequent petitions for review.

Undeterred, Brady filed a second suit in this court, challenging Judge Howard's ruling in her state court case and the decision of the New Hampshire Supreme Court.  Brady v. Howard, Case No. 21-cv-614-PB.  The court granted the defendants' motion to dismiss and denied Brady's motion to amend.  Doc. no. 8 & end. or. Jan. 18, 2022.  Brady appealed, and the First Circuit Court of Appeals affirmed the district court's decision for the reasons stated in the order granting the defendants' motion to dismiss.  Brady v. Howard, Case No. 22-1060 (1st Cir. Sept. 8, 2023).

In the current case, Brady v. Mosca, Case No. 23-cv-391-SM (D.N.H. Aug. 22, 2023), Brady sued the Somersworth School Board; Jeni Mosca, former Somersworth School District Superintendent; Pamela MacDonald, former Director of Special Education for the Somersworth School District; and Dana Hilliard, former Somersworth School Principal ("Somersworth Defendants").  She also sued Jeanne Kincaid, who was formerly legal counsel to the

school district.  In addition, she sued Richard Farrell, a
complaint investigator for the New Hampshire Department of
Education, and Virginia Barry, former Commissioner of the New
Hampshire Department of Education ("State Defendants"); and the
New Hampshire chapter of the National Education Association
("NEA-NH").  Brady also sued current and former employees of the
University of New Hampshire: Daniel Habib, Mary Schuh, and
Michael McSheehan (the "UNH Defendants").

Brady initially brought claims for a civil conspiracy among
defendants to deprive her of various constitutional rights and a
claim that the defendants violated her substantive due process
rights.  After the defendants moved to dismiss her claims, Brady
moved to amend to add further civil conspiracy allegations and
to add claims under the Racketeer Influenced and Corrupt
Organizations Act, 18 U.S.C. § § 1961-1968 ("RICO").  Brady also
moved to set aside the judgment in her state court case and
filed other related motions.  Judge McCafferty allowed Brady's
first motion to amend, which added civil conspiracy allegations
(doc. no. 23), as an addendum to the complaint, but denied the
other motions, and granted the defendants' motions to dismiss.
Doc. no. 71, at 2.  As is noted above, Judge McCafferty also
granted Brady an opportunity to file a motion for leave to amend
her complaint.

Brady moved for Judge McCafferty's recusal from the case. Doc. no. 90. The judge determined that while she was not required to recuse and harbored no bias for or against any party, she would recuse herself in deference to Brady's pro se status, which might cause Brady to perceive impropriety where none existed, and because the case was in early stages. Doc no. 95. The case then was reassigned to the undersigned judge. Entry, March 8, 2024.

I.  Motions for Reconsideration

Brady filed an "Objection for the Record" (doc. no. 72) to that part of Judge McCafferty's order denying her motions for default judgment against the State and UNH Defendants. Her objection is accompanied by 112 pages of appended exhibits, which include copies of emails sent by counsel for defendants in this case for assent to a motion to stay, a copy of the motion to stay, copies of Brady's filings in this case, and copies of the defendants' responses. She also filed a motion for reconsideration (doc. no. 76) of those parts of Judge McCafferty's order that denied her motions to amend her complaint and to set aside Judge Howard's order in Strafford County Superior Court. Brady submitted 64 pages of exhibits with her motion for reconsideration, which are copies of the

court's order (doc. no 71) and copies of Brady's filings and the
defendants' responses.

A.  <u>Objection to the Order</u>

Brady continues to rely on real or feigned ignorance about
the operation of Federal Rule of Civil Procedure 12 to support
her objection to the denial of her motion for default judgment.
She again argues that the defendants are in default because they
responded to her complaint with motions to dismiss rather than
with answers.  As Judge McCafferty stated in the order, that was
a proper response and not grounds for default.  <u>See</u> Fed. R. Civ.
P. 12(b) ("A motion asserting any of these defenses [including
failure to state a claim upon which relief can be granted] must
be made before pleading if a responsive pleading is allowed.)
Further, a motion to dismiss under Rule 12(b)(6) extends the
deadline for filing an answer until after the court rules on the
motion.  Fed. R. Civ. P. 12(a)(4).

Brady also faults the defendants for not filing an answer
to her RICO claims.  Brady did not allege RICO claims in her
original complaint but instead moved to amend the complaint to
add those claims.  Doc. no. 43.  The court denied the motion to
amend (doc. no. 71).  As a result, no RICO claims required an
answer.  Therefore, Brady's theory that the defendants were

required to answer the proposed but not allowed RICO claims is meritless.

B. <u>Motion for Reconsideration</u>

In addition to her objection, Brady moves for reconsideration of Judge McCafferty's order.  She contends that, contrary to the order, the State Defendants and the UNH Defendants defaulted by failing to file answers when ordered to do so.  She also challenges the denial of her motion to set aside Judge Howard's state court order and the denial of her motions to amend.

"[G]ranting a motion for reconsideration is an extraordinary remedy which should be used sparingly."  <u>Salmon v. Lang</u>, 57 F.4th 296, 323 (1st Cir. 2022).  When judgment has been entered, Federal Rules of Civil Procedure 59 and 60, govern motions for reconsideration.  Prior to judgment, however, a motion to reconsider an interlocutory order must "demonstrate that the order was based on a manifest error of fact or law." LR 7.2(d).  A motion for reconsideration is not a means "'to advance arguments [a party] should have developed prior to judgment, nor . . . a mechanism to regurgitate old arguments previously considered and rejected.'"  <u>In re Buscone</u>, 61 F.4th 10. 35 (1st Cir. 2023) (quoting <u>Biltcliffe v. CitiMortgage, Inc.</u>, 772 F.3d 925, 930 (1st Cir. 2014)).

1.  Default Judgment

Brady again argues that Judge McCafferty erred in failing to enter default judgment, with a focus on the State Defendants and UNH Defendants and the November 15, 2023, deadline for filing a response to Brady's complaint.  Once again, Brady fails to grasp the significance of a defendant filing a Rule 12(b)(6) motion to dismiss.  Because those motions were filed within the time allowed, no default occurred.

2.  State Court Judgment

Brady contends that the court erred in denying her motion to set aside Judge Howard's order in Brady's state court case and denying her motion for discovery and to admit evidence in support of setting aside the judgment.  Judge McCafferty correctly held that this court lacks jurisdiction to set aside the state court judgment, citing Efreom v. McKee, 46 F.4th 9, 17 (1st Cir. 2022).  Doc. 71 at 10.  Brady mistakenly argues that this court may set aside a state court judgment under Federal Rule of Civil Procedure 60(b), but that rule only applies, when appropriate, to federal court judgments.  See Fed. R. Civ. P. 1. Therefore, Brady provides no grounds for reconsideration of that part of Judge McCafferty's order.

3.  Motions to Amend

Brady objects that Judge McCafferty considered the additional allegations proposed in her motion to amend (doc. no. 23) as an addendum to the original complaint, arguing without support that her motion should have been granted to allow an entirely new complaint.  Brady, however, failed to file a proposed amended complaint with her motion.  See LR 15.1(a). For that reason, the motion to amend was deficient, and the court was generous in considering the additional allegations as an addendum to the original complaint.

With respect to the second and third motions to amend (doc. nos. 31 and 43), Brady argues that she alleged facts to support the RICO claims and to show a conspiracy.  She disagrees with Judge McCafferty's evaluation of her allegations and proposed claims.  Despite Brady's view, her allegations, even taken as true, did not show any agreement among the defendants, which was necessary to support her RICO conspiracy theory.  The motions to amend were properly denied.

II.  Current Motions to Amend

Judge McCafferty gave Brady a last opportunity to file a motion for leave to file an amended complaint.  Doc. no. 71, at 22.  The deadline for seeking leave to amend was January 19, 2024.

In response, Brady first filed an amended complaint on January 19, without seeking leave to do so.  Doc. no. 82. Realizing her error, she filed the same amended complaint twice (doc. nos. 83 and 84), first with an attached motion for leave and second with an explanatory motion.  Those filings were docketed after the deadline.

Then, Brady filed a motion to clarify (doc. no. 88) on February 9, 2024, in which she explained that the motions were filed out of order and that the second motion (doc. no. 84) should have been filed first.  On March 7, 2024, Brady filed a supplemental motion to amend (doc. no. 94) to include the University of New Hampshire as a defendant in Count II in the proposed amended complaint.  Three days later, she moved to amend the supplemental motion (doc. no. 96) to add "New Hampshire Attorney General, Nancy Smith" as a defendant.  She also argues that Judge McCafferty's order (doc. no. 71) was the result of bias against her.

Brady plainly failed to abide by the conditions Judge McCafferty established for her to seek leave to amend her complaint.  The court could and, in light of Brady's litigious history, is inclined to deny the motion to amend on that basis alone.  Affording leniency, however, because of Brady's pro se status (probably beyond what is called for in the circumstances presented here), the court will allow Brady's motions to seek

leave to amend, filed as documents 83 and 84, to relate back to the amended complaint she erroneously filed on January 19. Based on Brady's filings, she intends to seek leave to file an amended complaint, filed as document no. 83. Brady's subsequent efforts to further supplement her motions to amend (doc. nos. 94 and 96), which were filed long after the January 19 deadline, are denied as untimely. The court will address Brady's filings as seeking leave to amend as proposed in the amended complaint filed as document no. 83.

The proposed amended complaint (document no. 83) alleges five causes of action under 42 U.S.C. § 1983, Counts I through V. Brady again names a large group of defendants, which can be divided into groups. The Somersworth Defendants are Jeni Mosca, former Somersworth School District Superintendent; Pamela MacDonald, former Special Education Director for the Somersworth School District; Dana Hilliard, former Somersworth School Principal; Jeanne Kincaid, former legal counsel to the school district; and the Somersworth School Board. She also proposes claims against Virginia Barry, former Commissioner of the New Hampshire Department of Education, and Richard Farrell, and a complaint investigator for the New Hampshire Department of Education ("State Defendants") and current and former employees of the University of New Hampshire, Daniel Habib, Mary Schuh, and Michael McSheehan ("UNH Defendants"). She also names the

New Hampshire chapter of the National Education Association ("NEA-NH") as a defendant.  Although Brady continues to include allegations about New Hampshire state judges, she does not propose to name the judges as defendants, and it would be futile to do so as the court previously held, see Brady v. Howard, 2022 DNH 006, 2022 WL 88159 (D.N.H. Jan. 7, 2022), and because of the protection of absolute judicial immunity.

###    A.   Statute of Limitations

As the defendants pointed out in their motions to dismiss and now reiterate in opposition to Brady's motion for leave to amend, Brady's claims are barred by the applicable statute of limitations.  For purposes of claims under § 1983, the court uses the general personal injury statute of limitations in the jurisdiction where the claim arises.  Fincher v. Town of Brookline, 26 F.4th 479, 485 (1st Cir. 2022).  In New Hampshire, the applicable statute of limitations is three years.  N.H. RSA 508:4; McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011).

The events from which Brady's claims arose began in 2012, with the film about Axel, and ended in 2015, when Brady's employment in the Somersworth School District was terminated.  Brady alleged claims that those events resulted in violations of her First Amendment right to free speech and her Fourteenth

Amendment right to due process in her first lawsuit, <u>Brady v.</u>
<u>Somersworth School Board</u>, Case No. 16-cv-69 (D.N.H. filed on
Feb. 22, 2016).  Although Brady argues that the continued
distribution of the film about Axel constitutes wire fraud (and
violates Axel's rights) and that her lack of success in her
state court case constitutes a violation of her right to due
process, those are not claims she alleges in her proposed
amended complaint.  Instead, her claims all arise from the
period between 2012 and 2015 and are time barred.

Even if Brady could show that her claims were timely, Brady
has not met the standard required to amend her complaint.


B.  <u>Plausible Claim</u>

Judge McCafferty directed that "if the proposed amendment
fails to include specific factual allegations demonstrating
plausible claims for relief against defendants, the court shall
— in light of Brady's history of repeatedly filing lawsuits and
motions to amend her complaint — dismiss the case with
prejudice."  <u>Id.</u>  A complaint states a plausible claim for
relief when it includes enough facts, taken as true and with all
reasonable inferences resolved in favor of the plaintiff, to
raise a right to relief above the level of speculation.  <u>Guerra-</u>
<u>Delgado v. Popular, Inc.</u>, 774 F.3d 776, 780 (1st Cir. 2014).  On
the other hand, "if the factual allegations in the complaint are

too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint does not state a plausible claim.  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).  The court will not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### 1.  Count I

In Count I, Brady alleges that all of the defendants' "conduct, as alleged more fully in all the paragraphs above . . . [p]roximately caused Lisa Brady to be denied her First Amendment right to free speech, and Fourteenth Amendment right to procedural due process."  Doc. no. 83, ¶¶ 125 & 126.  She further alleges that the defendants "proximately caused a deprivation of her right to have her day in court, to be afforded 'fair,' and 'meaningful' procedural due process."  Id., ¶ 126.  She states that the "Defendants acted with deliberate indifference and/or willful blindness to the strong likelihood that unconstitutional conduct would result."  Id., ¶ 127.

As such, Brady alleges no facts to support her claim in Count I.  Although Brady refers to her allegations in the remainder of her complaint, she was directed to "include specific factual allegations demonstrating plausible claims for

relief against the defendants." Doc. 71, at 22. Her conclusory statements that echo some elements of a cause of action under § 1983 are not factual allegations.

While the court affords pro se filings a degree of leniency, that consideration does not include an obligation, in the circumstances presented here, to search through the proposed amended complaint to look for factual allegations that might support Brady's claim. Brady's proposed amended complaint is 80 pages long with 154 paragraphs. This is at least her fifth attempt to state a claim in this case. Her allegations are overwhelmingly mere legal conclusions based on her beliefs and perceptions of the events that preceded and followed the termination of her employment. As the court has repeatedly explained to Brady, legal conclusions are not facts that can support a claim. Brady has also filed three prior lawsuits addressing the same events and issues. At this stage of the litigation, Brady must allege facts to support each claim, and she has not done so in Count I.

In addition, the court previously considered Brady's free speech and due process claims arising from the same circumstances and events and dismissed them. See Brady v. Somersworth School Board, Case No. 16-cv-69 ("Brady I"). There, as well as here, Brady alleged that the Somersworth Defendants violated her First Amendment right to free speech and her

Fourteenth Amendment right to procedural due process.  The court dismissed Brady's claims against Jeanne Kincaid (doc. no. 23), because Kincaid was not a state actor, and granted the remaining defendants' motion for judgment on the pleadings (doc. no. 56) as to Brady's free speech and due process claims as failing to state actionable claims.

### a.  Free Speech

In Brady I, Brady claimed that the Somersworth Defendants violated her right to free speech by terminating her employment "because she expressed negative opinions about the 'Axel' film, accused the school district and others of grant fraud, and tried to protect [Axel]."  Brady I, doc. no. 56, at 8.  The court concluded that Brady was a public employee when she made her critical remarks and that a heightened standard applied to show a violation of the First Amendment in that context.  Doc. no. 56, at 8-10.

As a public employee raising a right to free speech, Brady was required to show "(1) she was speaking as a citizen, not an employee, 'on a matter of public concern,' (2) her interests as a citizen outweighed the interests of her employer to provide public services efficiently, and (3) her speech was a substantial or motivating factor in the employer's action."  Id. at 8 (quoting McGunigle v. City of Quincy, 935 F.3d 192, 202

(1st Cir. 2016)).  "Then, even if the employee can prove all three elements, the employer is not liable if it can show it would have taken the same action if the employee had not spoken out."  Id.

The court concluded that Brady had not alleged facts to establish any of the elements necessary for a free speech claim made by a public employee.  The court also held that the facts she alleged showed that the defendants had a "multitude of legitimate reasons for terminating her employment."  Id. at 10. That ruling was affirmed on appeal.  Brady v. Somersworth School Board, Case No. 16-2448 (1st Cir. Oct. 13, 2017) ("Although Brady was entitled to disagree with the defendants and other school officials regarding the appropriate educational plan for the student in question, the efficacy or legitimacy of facilitated communication, or the question of whether grant money had been used improperly, she was only entitled to do so in a manner that comported with federal law.").

In this case, Brady alleges that all of the defendants violated her right to free speech, but she did not provide any factual context for the claim.  Based on Brady's allegations in the remainder of the proposed amended complaint, she claims that the defendants all violated her right to oppose the Axel film and the use of facilitated communication by terminating her employment.  That is the same free speech claim that she alleged

and litigated in <u>Brady I</u> and the analysis in <u>Brady I</u> bars the
claim.


     b.  <u>Procedural Due Process</u>

     Similarly, Brady also alleged in <u>Brady I</u> that her
employment was terminated in violation of her right to due
process under the Fourteenth Amendment.  The court in <u>Brady I</u>
provided the following due process standard:  "'Procedural due
process protects a right to a fundamentally fair proceeding.'
<u>Teng v. Mukasey</u>, 516 F.3d 12, 17 (1st Cir. 2008).  To that end,
procedural due process requires that a party be afforded notice
and an opportunity to be heard 'at a meaningful time and in a
meaningful manner' before deprivation of life, liberty, or
property.  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)."
<u>Brady I</u>, doc. no. 56, at 11.

     Applying that standard, the court reviewed the pre-
termination hearings provided to Brady and addressed her concern
that she had been criminally prosecuted by the School Board.
The court concluded that no due process violation occurred.  On
appeal, the First Circuit wrote:  "Judgment was properly entered
on Brady's procedural due process claim because according to the
pleadings, she was provided with notice of the charges by her
employer and was given an opportunity to respond to those

22

charges."  Brady v. Somersworth School Board, Case No. 16-2448
(1st Cir. Oct. 13, 2017).

Brady appears to raise the same due process claim in her
proposed amended complaint, albeit against all of the
defendants.  The court in Brady I addressed the issue of whether
Brady's due process rights were violated in the proceedings that
lead to her termination and decided that no due process
violation occurred.  Brady has not shown that the court's
previous analysis would not also apply here.

### c.  Res Judicata

As the defendants contend, the free speech and due process
claims are also barred by res judicata.  When two cases involve
the same issue of law or fact, the parties actually litigated
the issue in a prior case, the court decided the issue on the
merits in the prior case, and that decision was essential to the
judgment on the merits, a party in the prior case cannot raise
the same issue again in a subsequent proceeding.  Global NAPs,
Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 95 (1st Cir. 2010).
For that reason, even if Brady had provided facts to support
Count I, the issues of violation of her right to free speech and
right to due process were decided in Brady I and cannot be
relitigated here.

2.  Count II

Count II is titled, "Section 1983 - Liability in Connection with the Actions of Another - Municipalities-Liability Through Adopted Policies, and Inadequate Training or Supervision." Brady alleges that the Somersworth Defendants had a policy not to properly train or supervise staff with respect to facilitated communication and that policy violated Axel's rights to privacy and Brady's rights to due process and free speech.  Brady alleges that the Somersworth Defendants "failed to adequately train their employees and themselves, and to supervise employees, and it amounted to a deliberate indifference to the fact that inaction would obviously result in the violation of falsely portraying Axel in a public film, being sold world-wide, and then denying Brady the right to meaningful due process, and free speech in retaliation for her right to advocate for her student."  Doc. no. 83, ¶ 130.  She alleges that the Somersworth Defendants "adopted a policy to use a discredited educational technique" and failed to adequately train themselves and their employees "and that amounted to deliberate indifference."  Id., ¶ 132.  She alleges that employees in the Somersworth School District changed Axel's programming and relied on facilitated communication in violation of the Individuals with Disabilities in Education Act ("IDEA").

Axel is not a party in this case, and Brady cannot bring claims on Axel's behalf.  To the extent she alleges that the Somersworth Defendants violated Axel's rights, she does not state a plausible claim for relief.  The City of Somersworth is not named as a defendant.  Further, Brady lacks standing to bring a claim under the IDEA.  See Pontarelli v. McKee, 2023 WL 315593, at *2-*3 (D.R.I. Jan. 19, 2023).

In addition, Brady's allegations in Count II are a mere string of legal conclusions without facts to support her claims that the defendants violated her rights to free speech and due process.  She also does not allege facts to show that a failure to train or supervise Somersworth staff in facilitated communication occurred or that those alleged deficiencies caused the constitutional violations she asserts.  Brady's allegations, such as they are, do not differentiate this claim from the holding in Brady I, where the court dismissed Brady's claim that the Somersworth Defendants violated her rights to free speech and due process.

As such, Brady does not allege a plausible claim for relief in Count II.


3.  Count III

In Count III, Brady alleges municipal liability for failure to train and discipline "In Constitutionally Adequate

Investigation Techniques, Procedures and/or Duties."  Brady
alleges that the Somersworth Defendants "adopted a custom,
policy and/or practice of failing to train, supervise, or
renounce and/or discipline employees and/or its' elected
officials regarding constitutionally of proper investigation
procedures, and to ensure that unreliable, discredited, false
and defamatory assertions that an employee has been found to
have violated a N.H. Statute without having had any opportunity
for due process in a court of law, to validate such findings."
Doc. no. 83, ¶ 137.  She alleges that the Somersworth Defendants
violated her First and Fourteenth Amendment rights because she
"was subjected to defamation of character."  Id.  She also
alleges that the defendants' "coercive threats to terminate her
employment" unless she complied with their requirement that she
not report "Axel's exploitation," violated her First and
Fourteenth Amendment rights.  Id. ¶ 138.

As discussed in the context of Count I, Brady raised the
same claims in Brady I.  The court dismissed the claims because
Brady was speaking as a teacher and did not allege facts to meet
the elements of a First Amendment violation in the context of
speech by a public employee.  Doc. no. 56, at 10.  The court
also concluded that Brady did not allege facts to show either a
procedural or substantive due process violation.  Id. at 11-15.
Brady's conclusory allegations about a failure to train and

discipline employees do not provide facts that would differentiate her claims from those previously alleged and dismissed.

Brady does not allege a plausible claim in Count III.

### 4.  Count IV

In Count IV, Brady asserts a civil conspiracy claim against the defendants, as she did in her dismissed complaint in this case.  As provided in the order dismissing Brady's civil conspiracy claim, [a] civil conspiracy under section 1983 consists of:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Sánchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (internal quotations and brackets omitted).  See doc. no. 71, at 13. Because an agreement among defendants is the heart of a conspiracy claim, "the plaintiff must allege facts that show defendants knew 'the essential nature and general scope' of a particular plan, 'or at the least that the parties decided to act interdependently, each actor deciding to act only because he was aware that the others would act similarly.'  Sánchez, 972 F.3d at 12 (quotation omitted)."  Doc. no. 71, at 14.  As in all

pleadings, the plaintiff must allege facts to show a conspiracy, and speculative or conclusory allegations will not support the claim. See Webber v. Deck, 433 F. Supp. 3d 237, 247 (D.N.H. 2020).

Again, Brady fails to allege any facts to show that the defendants entered an agreement to deprive her of her civil rights. Instead, she relies on her own suspicions and conclusory statements that the defendants "acted in concert" and "assisted one another to accomplish the unlawful purpose described in more detail in the paragraphs above, by committing overt acts against Lisa Brady." Doc. no. 83, ¶ 141; see also, e.g. id. at ¶¶ 67, 71, 89, & 92. The allegations in the complaint do not allege any agreement among the defendants to inflict a wrong on Brady.

Brady also does not allege facts that show the defendants conspired to violate her rights to free speech and due process. See Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (a civil conspiracy requires allegations that the defendants caused "an actual deprivation of a right secured by the Constitution and laws" to the plaintiff bringing the claim). Brady confuses the harm she perceives the film caused Axel with her own civil rights, but she cannot assert a claim based on Axel's rights. She also repeatedly charges that the actions taken by the UNH Defendants to produce, promote, and sell the film, which she

alleges is fraudulent, constitute mail and wire fraud, which violated her civil rights.  Brady makes no supported argument or even a rational connection between her allegations of criminal conduct and violation of her rights to free speech and due process (or any other constitutional right).

In summary, Brady alleges no facts that show the defendants' entered a conspiratorial agreement or that their actions violated her constitutional rights.  As such, Brady has not alleged facts to support her civil conspiracy claim.

### 5.  Count V

In Count V, Brady alleges that the defendants retaliated against her because she advocated for Axel.  She alleges that her constitutionally protected activity was reporting that Axel was exploited in the film.  As noted above, however, Brady has not alleged facts to show that her statements about Axel were constitutionally protected in light of her status as a public employee.  Therefore, Brady has not alleged a plausible claim in Count V.

### Conclusion

For the foregoing reasons, Brady has not shown grounds for reconsideration of Judge McCafferty's order dismissing her

complaint and her objection (document no. 72) and her motion for reconsideration (document no. 76) are denied.

Brady also has not alleged specific facts to demonstrate a plausible claim against the defendants, and for that reason, her verified complaint (document no. 82) is not allowed, and her motions to amend and to supplement (document nos. 83, 84, 88, 94, and 96) are denied.

The defendants' joint motion to stay (document no. 97) is terminated as moot.

The case is dismissed with prejudice.  The clerk of court shall enter judgment accordingly and close the case.


        SO ORDERED.


                              _____
                              Steven J. McAuliffe
                              United States District Judge

March 27, 2024

cc:  Lisa Marie Brady, pro se
     Counsel of Record